U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 4 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NELDA DAVIS,                    §
                               §
          Plaintiff,           §
                               §
VS.                            §   NO. 4:14-CV-491-A
                               §
THE CITY OF FORT WORTH, ET AL.,§
                               §
          Defendants.          §

MEMORANDUM OPINION AND ORDER

Came on for consideration the motions of defendants Dacian
Halmagean ("Halmagean") and Amy Olson ("Olson") for summary
judgment. The court, having considered the motions, responses of
plaintiff, Nelda Davis, the record, the summary judgment
evidence, and applicable authorities, finds that the motions
should be granted.

I.

Plaintiff's Claims

Plaintiff's claims arise out of an incident that occurred on
January 1, 2013, at Westchester Plaza Assisted Living Facility in
Fort Worth, Texas, where plaintiff was the executive director.
Plaintiff called 911 and requested that a Fort Worth police
officer come to the Westchester Plaza to issue a trespass warning
and escort a visitor named Roderick Miles off the premises. Miles
had been told by the chief executive officer of the facility the
day before that he was no longer welcome at the facility. The

chief executive officer instructed plaintiff not to allow Miles
on the property. When Miles appeared on January 1, plaintiff
called for assistance and defendants Halmagean and Olson, Fort
Worth police officers, were dispatched. After a discussion with
plaintiff, the officers and Miles went outside. Instead of
complying with plaintiff's request to issue a trespass warning
and escort Miles off the premises, Officers Halmagean and Olson
told Miles that he was free to enter the facility and to visit
with his brother-in-law who resided there. Miles went back
inside, where plaintiff again told him he was not welcome.
Plaintiff escorted Miles out the door and the officers approached
to determine what was happening. The officers told Miles that he
could go up the elevators to his brother-in-law's residence, but
plaintiff insisted that he could not. As the group moved back
through the doors into the facility, Officer Olson grabbed
plaintiff's right hand and told her that she was arresting
plaintiff for assaulting a police officer. Officer Halmagean
twisted plaintiff's left arm behind her back with such force that
it shattered her arm bone into pieces, then pushed plaintiff down
to the ground. Both officers knelt on plaintiff's back while they
handcuffed her. Plaintiff was placed in a police car. Plaintiff
realized that she could not feel her left arm and so advised
Officer Halmagean, but he left her alone in the car. Eventually,

after plaintiff heard Officer Olson ask Officer Halmagean if plaintiff had learned her lesson yet, the officers let plaintiff go and did not charge her with any crime.

On April 4, 2014, plaintiff filed her original petition in County Court at Law No. 1 of Dallas County, Texas. Defendant City of Fort Worth filed a notice of removal and, by order signed June 25, 2014, the action was transferred to the Fort Worth Division of this court. Plaintiff has twice amended her complaint, once at the court's direction and once by leave of court.

As the court noted in its October 29, 2014, memorandum opinion and order, plaintiff's theories of recovery against Officers Halmagean and Olson were: (1) excessive force under the Fourth Amendment and 42 U.S.C. § 1983, (2) unreasonable seizure under the Fourth Amendment and 42 U.S.C. § 1983, (3) assault and battery, and (4) failure to render medical care to plaintiff. By memorandum opinion and order signed October 30, 2014, the court dismissed plaintiff's official capacity claims against Officer Halmagean and Olson as they were redundant of the claims against City of Fort Worth, and also dismissed the state law claims of assault and battery. The court suggested that an appropriate method of seeking summary disposition of the remaining claims against these defendants would be by motion for summary judgment.

II.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case.  Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").  If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party

4

as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 597 (1986). In <u>Mississippi Prot. & Advocacy Sys. v. Cotten</u>, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[1] <u>Celotex Corp.</u>, 477 U.S. at 323. If the record taken as a whole[2] could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. <u>Matsushita</u>, 475 U.S. at 597; <u>see also</u> <u>Mississippi Prot. & Advocacy Sys.</u>, 929 F.2d at 1058.

---

[1] In <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

[2] The court notes that plaintiff has filed objections to, and motions to strike, the defendants' summary judgment evidence. The court is not granting the motions, but, as is its custom, giving the summary judgment evidence whatever weight it may deserve.

5

III.

Grounds of the Motions

Defendants Halmagean and Olson assert that plaintiff cannot establish the elements of any of her claims against them, and that, even if she could, they are entitled to qualified immunity.

IV.

Analysis

A.   Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official

6

could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."  457 U.S. at 818.  In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not.  Elder v. Holloway, 510 U.S. 510, 512 (1994).  If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity.  Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992).  "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."  Malley, 475 U.S. at 341.

    In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable.  Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992).  In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right.  Siegert, 500 U.S. at 232.  Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has

clearly occurred.  Connelly v. Comptroller, 876 F.2d 1209, 1212

(5th Cir. 1989).  A mistake in judgment does not cause an officer

to lose his qualified immunity defense.  In Hunter, the Supreme

Court explained:

> The qualified immunity standard "gives ample room for
> mistaken judgments" by protecting "all but the plainly
> incompetent or those who knowingly violate the law."
> Malley, [475 U.S.] at 343. . . .  This accommodation for
> reasonable error exists because "officials should not err
> always on the side of caution" because they fear being sued.
> . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is

on the plaintiff to negate the defense.  Kovacic v. Villarreal,

628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake

Jackson, 28 F.3d 425, 428 (5th Cir. 1994).

B.    Unreasonable Seizure

The Fourth Amendment protects the right of the people to be

secure in their persons against unreasonable searches and

seizures. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). The

Fourth and Fourteenth Amendments guarantee that a person will not

be arrested without probable cause. Sanders v. English, 950 F.2d

1152, 1159 (5th Cir. 1992). There is no cause of action for false

or unlawful arrest unless the arresting officer lacked probable

cause. Fields v. City of South Houston, 922 F.2d 1183, 1189 (5th

Cir. 1991). Probable cause exists when the totality of the facts

and circumstances known to the officer at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir. 2008). A mistake reasonably made justifies qualified immunity. Id. And, a defendant's acts are held to be objectively reasonable unless all reasonable officers in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's constitutional rights. Thompson v. Upshur Cnty., 245 F.3d 447, 457 (5th Cir. 2001). In other words, if officers of reasonable competence could disagree on whether there was probable cause for arrest, immunity should be recognized. Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

Plaintiff alleges that the individual officers did not have probable cause to arrest her, because she did not touch Officer Olson and because the officers were not performing a duty or exercising authority granted by law at the time plaintiff allegedly interfered with them. Here, the summary judgment evidence shows that each officer had a different understanding of what they were entitled to do. Officer Halmagean did not believe that the officers could escort Miles back onto the property after he had been asked to leave by plaintiff; Officer Olson believed that Miles had an absolute right to visit his brother-in-law and

9

that policy of the City of Fort Worth was for police officers to
facilitate such visits. (Plaintiff has not established that no
reasonable officer could believe as Olson did.) Consequently,
Officer Olson escorted Miles toward the elevator, at which time
plaintiff tried to block the path. Plaintiff was adamant that
Miles not be allowed back into the facility. Whether plaintiff
actually touched Officer Olson is subject to debate. The video
evidence is murky at best, but does clearly show plaintiff trying
to block Miles from entering the building. And, plaintiff is
using her hands and gesturing and apparently vocally protesting.
Officer Halmagean testified that he saw plaintiff put her hands
on Officer Olson and heard Olson say that plaintiff was being
arrested for assault. Officer Halmagean came to the assistance of
Officer Olson in making the arrest. Plaintiff has not established
that no reasonable officer could have thought that what he was
doing in assisting Officer Olson was right. Nor has she
established that Officer Olson lacked probable cause for
plaintiff's arrest. Whether plaintiff touched Officer Olson or
not, plaintiff was interfering with the conduct of police
business by Officer Olson at the time. As stated, plaintiff has
not established that every reasonable officer would have known
that Miles was not allowed to visit his brother-in-law based on
the facts known at the time. The evidence shows that although

10

plaintiff told the officers that Miles had received a criminal trespass warning, the document plaintiff produced did not have Miles's name on it. Further, plaintiff admitted that Miles was not causing trouble that day. And, the presence of Miles did not appear to threaten or endanger anyone at the facility. Thus, defendants Halmagean and Olson are entitled to qualified immunity as to the unreasonable seizure claim.

C.   <u>Excessive Force</u>

To prevail on her excessive force claim, plaintiff must establish (1) an injury (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. <u>Tarver v. City of Edna</u>, 410 F.3d 745, 751 (5th Cir. 2005). In assessing the claim, the court may consider the severity of the crime at issue, whether plaintiff posed an immediate threat to the safety of the officers or others, and whether plaintiff was actively resisting arrest or attempting to flee. <u>Graham v. Conner</u>, 490 U.S. 386, 396 (1989). In addition, the court may consider the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur." <u>Brown v. Lippard</u>, 472 F.3d 384, 386-87 (5th Cir. 2006). The reasonableness of the officer's

11

conduct is judged from the officer's perspective rather than with 20/20 hindsight. Graham, 490 U.S. at 396. The analysis must take into account that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Id. at 396-97.

Here, plaintiff relies on the fact that her arm was broken in multiple pieces and the testimony of other police officers that broken arms seldom occur during arrests in order to urge that excessive force was used. Other summary judgment evidence establishes, however, that plaintiff's arm was made more brittle by existing medical conditions. And, plaintiff herself does not really know at what point her arm was broken. The video evidence reflects that somewhat of a scrum took place and there was movement back and forth between a number of people before plaintiff went to the floor. The facts presented do not establish reason to believe that the officers intended or attempted to harm plaintiff. Rather, it appears that plaintiff and the officers piled on the floor together and that plaintiff's arm was broken at some unknown time. Defendants Halmagean and Olson are entitled to qualified immunity as to the excessive force claim.

D.    <u>Denial of Medical Care</u>

In her response to the Officer Halmagean's motion for summary judgment, plaintiff withdraws the claim that she was denied medical care.

V.

<u>Order</u>

For the reasons discussed herein,

The court ORDERS that the motions of Officers Halmagean and Olson for summary judgment be, and are hereby, granted; that plaintiff take nothing on her claims against said defendants; and that plaintiff's claims against them be, and are hereby, dismissed.

The court determines that there is no just reason for, and hereby directs, entry of final judgment as to the dismissal of these claims.

SIGNED August 4, 2015.

JOHN McBRYDE
United States District Judge

13