

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NELDA DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-491-A |
| | § | |
| THE CITY OF FORT WORTH, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant City of Fort Worth ("City") for summary judgment. The court, having considered the motion, response of plaintiff, Nelda Davis, the record, the summary judgment evidence, and applicable authorities, finds that the motion should be granted.

I.

### Plaintiff's Complaint

In summary form, as alleged in her second amended complaint, Plaintiff alleges the following:

Plaintiff's claims arise out of an incident that occurred on January 1, 2013, at Westchester Plaza Assisted Living Facility in Fort Worth, Texas, where plaintiff was the executive director. Plaintiff called 911 and requested that a Fort Worth police officer come to Westchester Plaza to issue a trespass warning and escort a visitor named Roderick Miles off the premises. Miles had been told by the chief executive officer of the facility the day

before that he was no longer welcome at the facility. The chief executive officer instructed plaintiff not to allow Miles on the property. When Miles appeared on January 1, plaintiff called for assistance and defendants Dacian Halmagean ("Halmagean") and Amy Olson ("Olson"), Fort Worth police officers, were dispatched. After a discussion with plaintiff, the officers and Miles went outside. Instead of complying with plaintiff's request to issue a trespass warning and escort Miles off the premises, Halmagean and Olson told Miles that he was free to enter the facility and to visit with his brother-in-law who resided there. Miles went back inside, where plaintiff again told him he was not welcome. Plaintiff escorted Miles out the door and the officers approached to determine what was happening. The officers told Miles that he could go up the elevators to his brother-in-law's residence, but plaintiff insisted that he could not. As the group moved back through the doors into the facility, Olson grabbed plaintiff's right hand and told her that she was arresting plaintiff for assaulting a police officer. Halmagean twisted plaintiff's left arm behind her back with such force that it shattered her arm bone into pieces, then pushed plaintiff down to the ground. Both officers knelt on plaintiff's back while they handcuffed her. Plaintiff was placed in a police car. Plaintiff realized that she could not feel her left arm and so advised Halmagean, but he left

2

her alone in the car. Eventually, after plaintiff heard Olson ask Halmagean if plaintiff had learned her lesson yet, the officers let plaintiff go and did not charge her with any crime.

Plaintiff asserts claims against City based on its alleged failure to instruct, supervise, control, or discipline Halmagean and Olson. Plaintiff complains of City's custom, practice, and/or usage of policy regarding "the appropriate use of force on a public citizen and the appropriate method and manner of seizing a public citizen by arrest." Pl.'s Second Am. Compl. at 10, ¶ 49. Specifically:

> 51. On information and belief, the policies, customs, practices, and/or usages that exist include the following:
>    a. The officers of the Fort Worth Police Department use excessive force without regard for the need for the use of force, or without regard for the legality of its use;
>    b. The officers of the Fort Worth Police Department use excessive force routinely without regard for whether the individual poses a threat of immediate harm, is actively resisting or attempting to evade arrest, or in situations that could be controlled by the use of other means;
>    c. The officers of the Fort Worth Police Department engage in conduct that violates the constitutional rights of citizens with whom they come in contact, including, but not limited to, arresting and detaining people in violation of the constitution and laws, both by the acts and means by which they are accomplished;

3

>   d.  The officers do not use the least
>       intrusive means of force necessary and
>       the officers, by their words or actions,
>       escalate encounters with citizens
>       creating or causing the need for
>       officers to use force or to use more
>       force than otherwise would have been
>       required;
>   e.  The officers of the Fort Worth Police
>       Department conspire with one another to
>       "cover" for and protect one another from
>       criminal and/or civil sanctions that
>       might arise from the violation of the
>       constitutional rights of a citizen.

Id. at 11-12, ¶51.[1]

Plaintiff seeks actual and punitive damages for the deprivation of her right to be free from excessive force and unreasonable seizure. Id. at 12-13, ¶¶ 45-47.

## II.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material

---

[1] The court notes that the next paragraph of the second amended complaint is numbered 44, continuing sequentially thereafter. Plaintiff's allegations regarding causes of action against defendant City are contained on pages 10-13, ¶¶ 47-51, 44-47, under the heading "The City of Fort Worth's Failure to Instruct, Supervise, Control, or Discipline Officers Halmagean and Olson."

4

fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. <u>Id.</u> at 324; <u>see also</u> Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 597 (1986). In <u>Mississippi Prot. & Advocacy Sys. v. Cotten</u>, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

5

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a whole[3] could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

III.

Grounds of the Motion

City asserts that plaintiff cannot prevail on her claims against it because City does not have a policy, practice, or custom that caused a deprivation of plaintiff's constitutional rights. Further, to the extent plaintiff asserts state law claims against it, City has not waived its sovereign immunity and is entitled to judgment as a matter of law.

---

[2] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

[3] The court notes that plaintiff has filed objections to, and a motion to strike, City's summary judgment evidence. The court is not granting the motion, but, as is its custom, giving the summary judgment evidence whatever weight it may deserve.

IV.

## Analysis

A. Governmental Liability

A governmental entity, such as City, can be subjected to monetary damages relief under 42 U.S.C. § 1983 only if one of its official policies caused a person to be deprived of a federally protected right. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). City cannot be held liable under a theory of respondeat superior or vicarious liability. Id. Instead, liability may be imposed against a local government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 692) (internal quotation marks omitted). To hold City liable under § 1983 thus requires plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." Spiller v. City of Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted). Therefore, liability against local government defendants pursuant to § 1983 requires proof of a policymaker, an official policy, and a violation of constitutional rights whose

"moving force" is the policy or custom. <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued <u>en banc</u> in response to a motion for rehearing in <u>Bennett v. City of Slidell</u>:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

The general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. <u>Fraire v. City of Arlington</u>, 957 F.2d 1268, 1278 (5th Cir. 1992). A plaintiff typically must at least allege a pattern of similar violations.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, ___ U.S. ___, 131 S. Ct. at 1359. The failure to train must constitute "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Id. (brackets in original) (citation omitted). To establish deliberate indifference for a failure to train ordinarily requires the plaintiff to show a pattern of similar constitutional violations. Id. at 1360. In other words, the plaintiff must show that City's policymakers were on actual or constructive notice that a particular omission in their training program caused City employees to violate citizens' constitutional rights, but City chose to disregard the known or obvious consequences of its program. Id.

B. Excessive Force

In footnote 3 of her summary judgment brief, plaintiff admits that she does not have a viable claim against City for a policy, custom, or practice related to the use of excessive force. Doc. 106[4] at 15, n.3.

---

[4] The "Doc." reference is to the document number on the Clerk's electronic filing record in this action.

9

C. <u>Medical Care</u>

Plaintiff makes no response to City's argument that there is no evidence that plaintiff's medical needs were ignored or that plaintiff was refused medical care. The court notes that plaintiff admitted, in her response to Officer Halmagean's motion for summary judgment, that she was withdrawing her claim related to medical care. Doc. 104 at 25.

D. <u>Unreasonable Seizure</u>

In her summary judgment brief, plaintiff references her "false arrest" rather than "unreasonable seizure," the term she used in her second amended complaint. And, plaintiff says that the evidence supports her claims against the City "for implementing a policy that authorized officers to enter business premises without a warrant, court order, or other due process, which led to [plaintiff's] false arrest." Doc. 106 at 15, n. 3. In the following pages, plaintiff describes what she says are unconstitutional customs or practices, to wit:

(1) the City had an unconstitutional custom or practice of affirmatively escorting unwanted individuals onto private property without warrant, court order, writ of re-entry, or other form of due process (discussed at pages 16-18);

(2) the City had an unconstitutional custom or practice of failing to enforce Texas' criminal trespass statute for multi-

10

family residential complexes, such as assisted living facilities (discussed at pages 18-21); and

(3) the City had a custom or practice of failing to train its officers regarding a private business owner's right to ban unwanted individuals from the business' private property (discussed at pages 21-22).

None of these three customs or practices was pleaded by plaintiff in her second amended complaint. Nor are they reasonably implicated by the complaint. Moreover, even if properly pleaded, plaintiff has failed to show that these customs or practices are facially unconstitutional with regard to plaintiff. Although it might violate the rights of the owner of a facility for the police to escort a trespasser, plaintiff has not shown that her rights were violated or would have been violated by such action. And, plaintiff has not shown that City acted with deliberate indifference with regard to an objectively intolerable risk of harm to her.[5] See Farmer v. Brennan, 511 U.S. 825, 837 (1994). For example, she has not shown that there were any prior confrontations between the City's police officers and property owners or their representatives based on the alleged policies of

---

[5] For example, it might be shown that there was a risk of harm to persons who might be injured by a trespasser who was allowed to return to the area from which he had been evicted.

11

refusing to enforce criminal trespass laws or escorting "unwanted individuals" onto private property.

Further, even if properly pleaded and even if unconstitutional, the alleged customs or practices have not been shown to be the moving force behind the violation of plaintiff's constitutional rights. As plaintiff admits, she must show that "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Doc. 106 at 31 (quoting Bd. of Cnty. Commr's v. Brown, 520 U.S. 397, 404 (1997)). In other words, City is liable if its custom or practice caused an employee to violate plaintiff's constitutional rights. Monell, 463 U.S. at 693. Here, there is no summary judgment evidence of such a causal link.

As she did in her responses to the summary judgment motions of Halmagean and Olson, plaintiff says that the violation of her constitutional rights was her arrest without probable cause. The court has already determined, by memorandum opinion and order signed August 5, 2015, Doc. 112, that Halmagean and Olson are entitled to qualified immunity in that regard. And, in any event, City has established that its policy requires officers making an arrest to have either a warrant or probable cause to make the

arrest. Thus, City's policy did not cause plaintiff's alleged harm.

In the alternative, plaintiff makes the unpleaded argument[6] that City violated her constitutional right to substantive due process "as an authorized representative of Westchester Plaza by depriving her and Westchester Plaza of property without due process of law." Doc. 106 at 30. The argument appears to be that since Halmagean and Olson had been asked to leave the facility, their return to escort Miles back to visit his brother-in-law without a warrant violated the rights of the property owner and, derivatively, plaintiff as its representative. Id. at 30-31. The cases she cites do not support the argument.[7] Texas law requires an ownership interest to support a trespass claim. See Boulanger ex rel. Westlum Tr. v. Waste Management of Tex., Inc., 403 S.W.3d 1, 3 n.1 (Tex. App.-Houston [1st Dist.] 2012, pet. denied). And, in any event, plaintiff has not established that the City's policy of enforcing the "residents' bill of rights," Tex. Health & Safety Code §247.064, which entitles a resident of an assisted

---

[6]City has not addressed this argument, because it was not pleaded. In seeking summary judgment as to all of plaintiff's claims, City only had an obligation to address the claims made in the second amended complaint, which is plaintiff's operative pleading.

[7]G.M. Leasing Corp. v. United States, 429 U.S. 338, 353-54 (1977), concerned a seizure made without warrant to satisfy tax assessments. In See v. City of Seattle, 387 U.S. 541 (1967), the Supreme Court held that an owner could not be prosecuted for exercising his constitutional right to insist that a fire inspector obtain a warrant authorizing entry upon his locked warehouse.

13

living facility to have personal visitation with any person of the resident's choice, was unconstitutional. In fact, she has not cited any authority to show that the owner of Westchester Plaza could bar Miles from visiting his brother-in-law under the facts alleged.

E.  State Law Claims

Plaintiff affirms in her summary judgment response that she is not asserting any state law claims against City. Doc. 106 at 33.

V.

Order

For the reasons discussed herein,

The court ORDERS that City's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on her claims against City; and that such claims be, and are hereby, dismissed with prejudice.

SIGNED August 6, 2015.

_____
JOHN McBRYDE
United States District Judge

14